UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. CR 93-109L |
| | : | |
| ANTHONY McKINNEY | : | |

# REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether the Defendant is in violation of the terms of his supervised release and, if so, to recommend a disposition of this matter. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, a hearing was held on June 17, 2005, at which time Defendant, through counsel and personally, admitted that he was in violation of his supervised release conditions as to the charged violations. At the hearing, I ordered Defendant detained pending my Report and Recommendation and final sentencing before Senior District Judge Ronald R. Lagueux. Based upon the following analysis and the admission of the Defendant, **I recommend that the Defendant be committed to the Bureau of Prisons for a term of nine (9) months of incarceration.**

## Background

On June 8, 2005, the Probation Office petitioned the Court for the issuance of a Warrant for Defendant's arrest. On June 9, 2005, the District Court reviewed the request and ordered the issuance of a Warrant. Defendant was arrested and appeared in Court for a hearing on June 17, 2005.

On June 17, 2005, Defendant knowingly and voluntarily admitted to the following charges and waived his right to a revocation hearing under Fed. R. Crim. P. 32.1(b)(2):

**The Defendant shall refrain from any unlawful use of a controlled substance.**

Mr. McKinney used marihuana as evidenced by his November 4, 2004, February 22, 2005, March 16, 2005, March 30, 2005 and May 17, 2005 positive urine screens.

**The Defendant shall refrain from any unlawful use of a controlled substance.**

Mr. McKinney used marihuana and vicodin as evidenced by his March 16, 2005 admission.

**The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

Mr. McKinney failed to report, as instructed, to the probation office in accordance with the Random Urinalysis Color Code Program on February 16, 2005, March 1, 2005, March 10, 2005, April 5, 2005, April 12, 2005, April 20, 2005, April 22, 2005, April 28, 2005, May 9, 2005 and May 25, 2005.

**The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

Mr. McKinney failed to seek out employment as directed by United States Probation Officer David S. Borrelli on January 20, 2005.

**The Defendant shall submit a truthful and complete written report within the first five days of each month.**

Mr. McKinney failed to submit written monthly supervision reports due on July 5, 2004, September 5, 2004, October 5, 2004, November 5, 2004, December 5, 2004, January 5, 2005, March 5, 2005 and May 5, 2005.

As the Defendant has admitted these charges, I find he is in violation of the terms and conditions of his supervised release.

**Recommended Disposition**

Section 3583(e)(2), 18 U.S.C., provides that if the Court finds that Defendant violated a condition of supervised release, the court may extend the term of supervised release if less than the maximum term was previously imposed. Here, the maximum term of supervised release is life.

Section 3583(e)(3), 18 U.S.C., provides that the Court may revoke a term of supervised release and require the Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term or supervised release without credit for time previously served on post release supervision, if the Court finds by a preponderance of evidence that the defendant has violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be sentenced to a term beyond 5 years if the instant offense was a Class A felony, 3 years for a Class B felony, 2 years for a Class C or D felony, or 1 year for a Class E felony or a misdemeanor. If a term of imprisonment was imposed as a result of a previous supervised release revocation, that term of imprisonment must be subtracted from the above-stated maximums to arrive at the current remaining statutory maximum sentence. In this case, Defendant was on supervision for Class B felonies. Therefore, he may not be required to serve more than three years' imprisonment upon revocation. However, since Defendant has already served twenty-four months' imprisonment as a result of one previous revocation, the statutory maximum term of imprisonment remaining is twelve months.

Pursuant to 18 U.S.C. § 3583(h) and § 7B1.3(g)(2), when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum

term of imprisonment authorized, the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. In this case, the authorized statutory maximum term of supervised release is life. There has been a total of twenty-four months' imprisonment previously imposed for violations of supervised release. However, the Court may still impose a life term of supervised release.

Section 7B1.1 provides for three grades of violations (A, B, and C). Subsection (b) states that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade.

Section 7B1.1(a) notes that a Grade A violation constitutes conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device; or any other offense punishable by a term of imprisonment exceeding twenty years. Grade B violations are conduct constituting any other offense punishable by a term of imprisonment exceeding one year. Grade C violations are conduct constituting an offense punishable by a term of imprisonment of one year or less; or a violation of any other condition of supervision.

Section 7B1.3(a)(1) states that upon a finding of a Grade A or B violation, the Court shall revoke supervision. Subsection (a)(2) provides that upon a finding of a Grade C violation, the court may revoke, extend, or modify the conditions of supervision. In this case, Defendant committed

Grade C violations. Therefore, the Court may revoke, extend or modify the conditions of supervision.

Section 7B1.3(c)(1) provides that where the minimum term of imprisonment determined under § 7B1.4 is at least one month, but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in § 5C1.1(e) for any portion of the minimum term. Should the Court find that Defendant has committed a Grade B or C violation, § 7B1.3(c)(2) states that where the minimum term of imprisonment determined under § 7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. The first provision which allows for alternatives for any portion of the minimum term applies to this matter.

Section 7B1.3(d) states that any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under § 7B1.4 (Term of Imprisonment), and any such unserved period of confinement or detention may be converted to an equivalent period of imprisonment. In this case, there is no outstanding restitution, fine, community confinement, home detention or intermittent confinement.

Section 7B1.4(a) of the USSG provides that the criminal history category is the category applicable at the time Defendant originally was sentenced. In this instance, Defendant had a criminal history category of IV at the time of sentencing.

Should the Court revoke supervised release, the Revocation Table provided for in § 7B1.4(a) provides the applicable imprisonment range. In this case, Defendant committed Grade C violations and has a Criminal History Category of IV. Therefore, the applicable range of imprisonment for this violation is six to twelve months.

Section 7B1.5(b) of the USSG provides that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered, for time previously served on post-release supervision.

**Offender's Characteristics**

On March 28, 1994, Defendant, having pled guilty to Conspiracy and Possession with Intent to Distribute Crack Cocaine, Class B Felonies, was sentenced to 120 months' incarceration, eight years of supervised release and a $100.00 special assessment. At his original sentencing hearing, Judge Lagueux explained the conditions of his supervised release to Defendant and advised him that he would be given the tools to rehabilitate himself such as substance abuse and mental health counseling during his supervised release period. However, Judge Lagueux admonished Defendant that if he failed "to turn his life around" with these tools upon release, he could "look forward to doing life in prison on the installment plan."

Defendant's initial period of supervised release commenced on October 5, 2001. Within a year, Defendant violated and was sentenced to a term of twenty-four (24) months' incarceration to be followed by further supervised release. Defendant's supervised release recommenced on June

25, 2004. Again, within a year, Defendant failed to comply with the terms of supervised release and has violated. Defendant reverted to regular drug usage and failed to comply with the directives of his Probation Officer. In addition to his acknowledged drug use, Defendant failed to report for scheduled drug screens and when he did report, he tampered with (diluted) his urine specimen on at least two occasions to avoid detection. The report from the Probation Office outlines significant efforts by Defendant's Probation Officer and his supervisors to assist Defendant prior to seeking revocation. Defendant did not cooperate. In fact, on May 27, 2005, Defendant met with the Chief Probation Officer about his continued drug use, and he was directed to contact his Probation Officer on May 31, 2005 to indicate whether he intended to stop using and follow his conditions. Defendant simply failed to contact his Probation Officer as directed. This Court can only assume that he did so because he was unwilling or unable to stop using drugs.

In his defense, Defendant argues that he was led to believe that his slate was wiped clean in late April / early May of this year when his Probation Officer proposed a modification to add mental health treatment to Defendant's conditions. Although Defendant agreed to the proposed modification, the Probation Office never presented the proposed modification to the Court. The Probation Officer initially believed that the modification was necessary to impose mental health treatment on Defendant. However, he was mistaken. Modification was not necessary because Judge Lagueux's Judgment for Revocation dated January 29, 2003 imposed mental health treatment as one of Defendant's special conditions of supervision. While this was apparently explained to Defendant, he asserts that he believed that his record was wiped clean as of the end of April 2005. Defendant's belief is reasonable given the confusion caused by the Probation Officer's mistaken belief.

At the revocation hearing, the Government argued for a sentence of twelve months imprisonment (the maximum) with no supervised release to follow. Defendant argued for the low end (six months) also with no supervised release to follow. The Probation Office indicates that if Defendant is sentenced to the maximum (twelve months), any addition term of supervised release is prohibited by statute. In any event, Defendant is not a good candidate for further supervised release having twice failed. This Court believes that continued supervision would be a waste of the Court's resources. Thus, I will accept the position of both parties and recommend no further supervised release.

As to the sentence, Defendant should and will be given some credit by this Court because he fully admitted and accepted responsibility for his violations. Defendant also asserts that I should give him some credit because of his reasonable belief that his slate was wiped clean by the modification. Although Defendant's belief may have been reasonable under the circumstances, the modification was unnecessary and never acted upon by the Court. Thus, the modification did not have the legal effect of wiping Defendant's slate clean. Further, the violations before me continued well past the date (May 4, 2005) when Defendant signed the modification waiver. For instance, Defendant had a positive drug screen on May 17, 2005, failed to report for drug screens on May 9, 2005 and May 25, 2005, and, as discussed above, failed to contact his probation Officer on May 31, 2005 as specifically instructed by the Chief Probation Officer. Thus, this Court does not believe that Defendant is entitled to any substantial credit due to his confusion over the modification. Defendant would have had a stronger argument if he had immediately come into compliance following the claimed wiping of the slate. He did not do so. The bottom line is that Defendant promptly reverted to drug use upon his release and has failed to comply with the instructions of Probation. He has

again failed to successfully complete his supervised release. As noted above, he will be given credit (two months) for admitting the violations and accepting responsibility and minimal credit (one month) for his mistaken, but reasonable, belief that his slate had been wiped clean.

**Conclusion**

After considering the various factors set forth in 18 U.S.C. § 3553(a), **I recommend that the Defendant be committed to the Bureau of Prisons for a term of nine (9) months of incarceration.**

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. Rule 32, Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's Decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

LINCOLN D. ALMOND
United States Magistrate Judge
June 24, 2005